SEBRING, Justice.
Howard A. Oikle, the plaintiff below, instituted an action at law for damages against the appellant- union, alleging that while employed as a union electrician in the City of Key West, he was accused orally by local union officials of a violation of certain union rules and was dismissed from the job by them; that after such removal, the union “refused to hold a formal hearing [as required by union by-laws] or, in the alternative, to * * * reinstate him as a member in good standing, and give him a clearance to go back to work.” He alleged damages to his earning capacity, reputation, name and character as a result of the union’s conduct; and averred that he “attempted to obtain work in his field in the same capacities, but has been refused same inasmuch as he is a non-union worker; that upon one occasion * * * the defendant Local threw up a picket line, thereby causing the plaintiff to lose his job; that on numerous other occasions the plaintiff was threatened * * * that said plaintiff is unable to bid on larger jobs and is restricted to such jobs where non-union members are employed.” (Emphasis supplied.)
A trial before a jury on these issues resulted in a verdict and judgment for *763 plaintiff in the amount of $5,000. On an appeal from the judgment the issues raised by the appellant union, the defendant below, concern the propriety of the court’s ruling which denied defendant’s motion for directed verdict, and the denial of defendant’s requests for certain instructions to the jury.
As we construe the complaint upon which the suit was based, it appears that plaintiff’s fundamental contention, the theory upon which he bases his right of action, is that he was wrongfully deprived of the rights and advantages of his membership in the defendant union, Local No. 349, International Brotherhood of Electrical Workers, by certain conduct of the local union officials which, he asserts, violated union rules and regulations requiring a hearing for members accused of rule infractions. The damages he seeks are for loss of income or earning power in two capacities; namely, as electrical contractor, and as an employee in his trade, his contention being that he was prejudiced in both pursuits by being forced to operate as a non-union man.
Insofar as his claim for damages rests on the contention that the defendant union prevented or hampered his operations as a union contractor, the record contains no evidence from which a jury could lawfully find for plaintiff. Indeed, his own testimony refutes such a conclusion. Upon interrogation while on the witness stand, he admitted unequivocally that while a nonunion man could certainly operate as an electrical contractor, union electricians were generally required on the larger or more desirable jobs, and “the only way [a contractor] can get union men working for [him] is to have a contract with the union which permits [him] to operate as a contractor;” that he, the plaintiff, had had such a contract with the union, but because of a grievance or dispute he had voluntarily relinquished it for cancellation prior to the altercation here involved, and prior to the time he claims to have been deprived of his status as a member of the electricians’ union.
We find no indication in the record that after the plaintiff voluntarily relinquished his contract, which permitted him to operate as a union contractor, he ever attempted at any time thereafter to renew that contract. Consequently, it would appear that even had the plaintiff remained in good standing as a union member, after relinquishing said contract, he would have had no right, by his own admissions concerning union rules and practice, the propriety of which he does not contest, to contract for jobs where union labor was to be used, since he had no contract by which he could have obtained union workers.
Defendant’s request for an instruction eliminating from the jury’s consideration the above issue should therefore have been granted, and the order denying such request constituted error.
There remains for determination the question raised by the defendant union with reference to evidence on the central factual issue in the case; that is, whether plaintiff was in truth deprived of his status as a union member, or whether, by his own conduct, he relinquished or failed to exercise his membership rights, and permitted the same to lapse. In view of the fact that the defendant union does not predicate its defense upon the theory that members have no right to a hearing upon being charged or suspended for violation of union rules, but relies instead upon a simple denial of ^ny suspension, the provisions of the union’s by-laws on that point are not brought into controversy, and it can be assumed that there is a provision for a hearing upon charges when a union member is to be deprived of any rights or standing.
Other regulations bearing upon the controversy, as they appear from copies of the by-laws and constitution of the IBEW which have been incorporated in the record, are, in summary, that union membership dues are payable quarterly; that no member is entitled to notice of dues or arrearages, but must take notice when payments are due; that upon non-payment before the end of the three-month period for which *764 they are due the delinquent member will “stand suspended,” but will be accorded, for a period of 90 days thereafter, the right to apply .for reinstatement; and that “members in arrears forfeit all right and previous standing.” Art. XXIII, IBEW Constitution as amended 1950; and ByLaws of L.U. 349.
Although the testimony of eye witnesses to the initial altercation or dispute between the plaintiff and representatives of the union is in considerable conflict, the plaintiff’s testimony, which the jury had the right to believe, was that on the day in question, December 6, 1951, certain union officials came to see him on the job where he was employed as a union journeyman electrician; that they accused him of employing non-union electricians on a job contracted by him; that he countered by denying the accusation and asserting that “As far as the contract [is concerned], I’m not the only one * * that he accused one of the union officials of doing the same thing — referring apparently to the practice, in violation of union rules, of contracting independently while working as a union electrician employee; that he [the official referred to] “started to come for me,” and Mr. Callahan, the union business agent, stepped between the parties to the altercation and said to the plaintiff, “the best thing for you is to get off the job until I get this straightened out * * *. Call me tonight and I’ll try to get it straightened out;” that he, the plaintiff, then left the job without further conversation.
The plaintiff testified further that he called Callahan, the union business agent, that evening and had this conversation: “ ‘When am I going to have my trial ?’ He said, ‘There is not going to be any trial.’ I said, ‘When am I going to get charged?’ He says, ‘There is no charge. Everybody is entitled to one mistake.’ I said, ‘I didn’t make any mistake.’ He says, ‘I’ll get it straightened out when I come to Key West.’ Then I didn’t hear from him.”
According to the record, the plaintiff, shortly after this episode, made certain collect calls to the union office, which were not accepted. Thereafter he completed, pursuant to Callahan’s suggestion, the contract job he had under way, and was then contacted by Callahan with reference to employment as a union master electrician upon another project. Subsequently, he met with Callahan and another party and was informed that the employer in question would not hire a master, but was offered alternative employment. In the words of the plaintiff, “Mr. Callahan says, ‘Do you want to go to work?’ And I was kind of let down, because I didn’t get that power plant job, and I says, ‘Well, I’ll think about it.’ ” Plaintiff admitted that at this same time another person, Mr. Stone, a union employer, told him he could go to work for him at any time. But Oikle did not thereafter contact Callahan or Stone in reference to this offer, and did not ask for a “referral” or clearance slip for union employment, or present his membership card, which was never revoked, to any official with a request for such employment; although as a former union business agent he was well aware of the necessity for procuring a referral slip before union employment. The only subsequent action taken by plaintiff in respect to obtaining work or recognition as a member of the IBEW was by letter to union officers during the month of January in which he demanded a letter of “reinstatement” together with $1,500 damages for the interval of unemployment he had suffered.
With respect to picketing by the union as the result of which plaintiff allegedly lost his job, plaintiff could recall only one occasion when it had been reported to him that a union picket appeared on a job where he was working. Upon further interrogation the plaintiff admitted that the picketing had had no consequences, and that he knew of no other threats having been made against him.
The only specific testimony offered by the plaintiff to demonstrate the cause of his employment or allegedly diminished income was that of an employer who said he had told Oikle he might be able to help him get a job if he “straightened out his difficulty” with the union; and Oikle’s own statement that he was subsequently denied the right *765 to bid on certain contract jobs by virtue of his being non-union.
In view of the character of the testimony, which we have set forth at some length, and the uncontroverted fact that the plaintiff never tendered payment of any union dues for the quarter immediately following the episode in question or at any time thereafter, in spite of the clear requirements of the rules of the organization by which he had agreed to be governed, see Harper v. Hoecherl, 153 Fla. 29, 14 So.2d 179, it seems manifest that the evidence wholly fails to sustain a finding for the plaintiff, and that consequently the motion for a directed verdict in favor of the defendant should have been granted.
The judgment appealed from should be reversed for the entry of a judgment in conformance with this opinion.
It is so ordered.
MATHEWS, C. J., and TERRELL and ROBERTS, JJ., concur.